439 F.2d 848
 Charlie WIGGINS, Carswell Duggan, Jr., et al., Plaintiffs-Appellants,
v.
Harris HAYNES, Gilbert Dean, Jack H. Garrett, Herman Layton, Marvin Hartley and Charles Tyson, as members of the Jury Commission of Washington County, Georgia, et al., Defendants-Appellees.
 No. 30995 Summary Calendar.*
 United States Court of Appeals, Fifth Circuit.
 March 12, 1971.
 Rehearing Denied and Rehearing En Banc Denied May 26, 1971.
 
 Thomas M. Jackson, Macon, Ga., Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Norman C. Amaker, Jack Greenberg, New York City, for plaintiffs-appellants.
 Denmark Groover, Jr., Byrd, Groover & Buford, Macon, Ga., for defendants-appellees.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs-appellants brought this action in the district court alleging racial discrimination in the composition of the grand and traverse jury lists for Washington County, Georgia, and in the absence of Negro jury commissioners for the county. The district court, noting changes made by the county in the selection of jury commissioners and compilation of jury lists subsequent to the filing of the suit but prior to the ruling of the court, concluded in an opinion dated September 2, 1970, that the defendants had not discriminated on the basis of race. (See Appendix A). Accordingly, the district court denied the prayers for relief. We have examined the briefs and the record and have determined that the evidence supports the findings and conclusions of the district court.
 
 
 2
 Affirmed.
 
 APPENDIX A
 
 3
 (Style and number omitted)
 
 BOOTLE, Chief Judge:
 
 4
 In this class action the plaintiffs attack the jury lists and the method of selecting jurors and the method of naming jury commissioners in Washington County, Georgia. The five first named defendants were jury commissioners at the time the complaint was filed. Since then the Judge of the Superior Court has named a new commission of six members and they have been substituted as parties defendants as follows: Harris Haynes, Gilbert Dean, Jack H. Garrett, Herman Layton, Marvin Hartley and Charles Tyson.
 
 
 5
 Count One attacks specifically the jury lists and alleges that the failure of the defendants to enroll plaintiffs and the members of their class on the jury lists "is the result of the deliberate and systematic exclusion and limitation by defendants of the number of Negro citizens resident in Washington County who are called for service on juries."
 
 
 6
 Count Two attacks specifically the composition of the jury commission and alleges that plaintiffs and their class have never been named to the commission "because of the pattern and practice of racial exclusion and segregation of blacks in Washington County, Georgia, including the entire process of jury selection," and alleges further that within memory the Judges of the Superior Court of Washington County, Georgia have never appointed a black person to serve on the commission.
 
 
 7
 The prayers are, in substance, that the jury commission be dissolved; that the Superior Court Judge be required to appoint plaintiffs and members of their class as members of a new jury commission; and that the present jury lists be dissolved and new jury lists be compiled.
 
 
 8
 Shortly after this suit was filed the Supreme Court decided Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), which disposes of Count Two of the complaint by holding that a mere failure to appoint black commissioners in the past does not establish discrimination and would certainly constitute no justification for federal courts' instructing a state court to make such appointments even assuming that under any circumstances a state court judge's discretion could be so controlled. The evidence in this case fails to show any intentional discrimination in the matter of appointment of jury commissioners. Indeed, it so happens that in appointing a new commission shortly after this suit was filed the Judge of the Superior Court named to that commission two black members and four white members.
 
 
 9
 The pertinent facts with respect to this jury selection process are as follows: According to the 1960 census blacks constitute 49.5 per cent of the adult population of the county. After the filing of this suit the Judge of the Superior Court inquired as to the number of names on the registered voters' list used in the last preceding general election, this being the list which commissioners are required to use in compiling jury lists, Ga.Code Ann. 59-106, and was informed that this list contained 3,417 black voters and 5,789 white voters, the percentage of black being 37. He learned also that in the last jury revision the old list of names obtained from the tax digest had been retained and simply supplemented by new names from the registered voters' list, and he knew therefore that under the holding of Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) a new jury list had to be compiled. Accordingly, he appointed the new commission and this commission immediately went to work in compiling a new list. They held six or eight meetings as a body and worked on their task on the following days: January 13, 29, February, 16, 17, 18, 20, 23, 24, 25, 27, March 2, 3, 4, 6, 9, 10, and 17, 1970. At the beginning of their work they were instructed by the Judge of the Superior Court who read to them the appropriate statutes including Ga.Code Ann. 59-106, which reads as follows:
 
 
 10
 "Revision of jury lists. Selection of grand and traverse jurors. — At least biennially, or, if the judge of the superior court shall direct, at least annually, on the first Monday in August, or within 60 days thereafter, the board of jury commissioners shall compile and maintain and revise a jury list of intelligent and upright citizens of the county to serve as jurors. In composing such list the commissioners shall select a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voters' list which was used in the last preceding general election. If at any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross-section of the intelligent and upright citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly representative thereon.
 
 
 11
 "After selecting the citizens to serve as jurors, the jury commissioners shall select from the jury list a sufficient number of the most experienced, intelligent and upright citizens, not exceeding two-fifths of the whole number, to serve as grand jurors. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county, except as otherwise provided herein, and no new names shall be added until those names originally selected have been completely exhausted, except when a name which has already been drawn for the same term as a grand juror shall also be drawn as a traverse juror, such name shall be returned to the box and another drawn in its stead." He explained to them that in the selection of jurors they were not restricted to the voters' list but could use such references as telephone books and R.E.A. lists. He explained also that there were some Mennonites in the county who, according to his information, did not register to vote. He provided for each of the six commissioners a complete copy of the old voters' list. He did not pass on to them his information as to the white and black ratio on the voters' lists. These lists incidentally contained no racial identification or any other identification with respect to any voter, simply his or her name and the Georgia militia district in which he or she resided, there being 21 of such districts. Each district was assigned to one or more commissioners who studied the voters' list with respect to said district and prepared and submitted to the entire commission proposed names from such district. The Commissioners confined themselves pretty largely to the voters' list although some names, perhaps a dozen about equally white and black, were selected from other sources. On one occasion the commissioners inquired of the Judge whether or not they were to work on a percentage basis as to white and black and the statute was again read to them, Ga.Code Ann. 59-106, and it was observed that the statute does not require percentages. They were told that they were to work for a fairly representative cross-section of the intelligent and upright citizens of the county. They undertook to do the best job they could under the mandate of this code section. They were told by the Judge to comprise a list of approximately 800 jurors which was estimated to be sufficient to last until or through August, 1971, when the next revision is contemplated. When the commission finished its work they had comprised a list of traverse jurors, 562 white and 206 black. From that traverse list they proceeded in accordance with the code section to compile a grand jury list of 221 white and 70 black. Thus on the traverse list blacks represent 26% and on the grand jury list they represent 24%. In compiling this jury list the commissioners were not concerned primarily, if at all, with racial percentages. Indeed, they did not know the percentage of whites and blacks on the list when it was completed and did not ascertain those figures until counsel for the defendants after a pre-trial conference in this case called upon them for that information. Then, for the first time, it was computed with the results above stated — traverse jury 26% black, grand jury 24% black.
 
 
 12
 Significantly, some jurors, both traverse and grand, were obtained from each of the 21 districts. The percentages of blacks per district range from a high of 55% in Strange District to a low of 0% in a few districts in which there are no black residents. The largest district is Sandersville which furnished 176 white and 96 black traverse jurors, the black percentage here being 36%.
 
 
 13
 If there were no evidence in this case except the 1960 census figures indicating a black population availability of 49.5% and a traverse jury black representation of 26% one might readily suspect discrimination. In view of all the facts as above found, however, this court finds as a fact that there was no racial discrimination. It has long been settled that "neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, 766 (1965). It is indeed, "impossible to meet a requirement of proportional representation." Idem. In Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549, 564, Mr. Justice Douglas, dissenting in part, said: "Jury selection is largely by chance; * * *. The law only requires that the panel not be purposely unrepresentative" and quoted with approval a Washington Post editorial in part as follows: "Quotas are understandably abhorrent to those seeking to do away with discrimination." Thus the Superior Court Judge in the case at bar correctly advised the commissioners that they were not required to work on a percentage basis and that they were, in the words of the statute, to "select a fairly representative cross-section of the intelligent and upright citizens of the county." The statute's requirement that citizens be "intelligent and upright citizens" in order to be eligible for jury service was sanctioned and approved by the Supreme Court in Carter v. Jury Commission of Greene County, supra. See also Turner v. Fouche, supra. The evidence fails to disclose that black citizens were in any manner discriminated against by the commissioners in the application of these requirements.
 
 
 14
 Accordingly, all prayers of the complaint are denied and counsel for the defendants may prepare an appropriate judgment and present the same after affording counsel for the plaintiffs an opportunity for suggestions as to form.
 
 
 15
 This 2nd day of September, 1970.
 
 
 16
 (Signed) W. A. BOOTLE
 CHIEF JUDGE
 
 
 17
 This is to certify that I have this date mailed a copy of the within to Mr. Thomas M. Jackson, 655 New Street, Macon, Ga. 31201; to Mr. Jack Greenberg, Mr. Norman Amaker, 10 Columbus Circle, New York, New York 10019; to Mr. Howard Moore, Jr., Mr. Peter E. Rindskopf, Suite 1154 Citizens Trust Company Bank Bldg., Atlanta, Ga. 30314; to Mr. Denmark Groover, Jr., P. O. Box 755, Macon, Ga. 31202;
 
 
 18
 This 2nd day of September, 1970.
 
 
 19
 (Signed) DOROTHY F. MOTES
 Dorothy F. Motes
 Deputy Clerk
 
 
 20
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 21
 The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 
 
 
 Notes:
 
 
 *
 [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I