**Wilbur William FOLSTON, Jr., Appellant,**

v.

**Harry L. ALLSBROOK; State of North Carolina, Appellees.**

**No. 82–6116.**

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1982.

Decided Sept. 27, 1982.

Rehearing Denied Nov. 1, 1982.

Dan T. Coenen, Charlotte, N. C. (Fleming, Robinson, Bradshaw & Hinson, P. A., Charlotte, N. C., on brief), for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten,

Atty. Gen., of North Carolina, Raleigh, N. C., on brief), for appellees.

Before HAYNSWORTH, Senior Circuit Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Wilbur Folston, Jr., appeals the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254. He contends the district court erred in not conducting an evidentiary hearing on his claim that the grand jury was unconstitutionally constituted, and in not finding constitutional error in the admission of certain evidence in the state court trial. We affirm.

A Cleveland County, North Carolina, jury convicted Folston of first degree murder and armed robbery in connection with the 1975 shooting death of a service station attendant. Folston originally was sentenced to death, but the North Carolina Supreme Court subsequently vacated his sentence and substituted a sentence of life imprisonment.

The evidence at trial was that Folston, Robert Hardy and Kevin Green were traveling together by car in the early morning of July 31, 1975. Hardy, the driver, pulled into a service station near Morganton, North Carolina, about 4:30 a.m. The attendant was forced by Folston and Green to empty the cash register at gunpoint, and then was shot to death. Folston, Hardy and Green were apprehended later the same day, following a high speed chase.

Folston and Hardy entered pleas of not guilty; Green was permitted to plead guilty to second degree murder in exchange for his agreement to testify against his codefendants. Prior to trial Folston moved to quash his indictment alleging, among other things, that women had been systematically underrepresented on the grand jury which indicted him. This motion was denied; Folston also was unsuccessful in his efforts to have his trial severed from Hardy's.

At trial, Green testified regarding his version of events at the service station, and also testified, over defense objections, to conversations which occurred while all three codefendants were held in the same cell in late November, 1975.

Following his conviction and affirmance by the North Carolina Supreme Court, Folston brought this habeas corpus action, contending that the state trial judge erred in refusing to quash the indictment and sever the trials, and in admitting Green's testimony regarding the jailhouse conversations. The district court judge rejected all of Folston's contentions and dismissed his petition without holding an evidentiary hearing on his grand jury claim, finding that he was required to accept the result of the state court determination under *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1968). We agree.

In *Townsend* the Court held that a district court evidentiary hearing on a state prisoner's federal habeas corpus claim is not necessary, provided the prisoner received a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding. The Court set forth the specific circumstances under which an evidentiary hearing becomes mandatory:

If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313, 83 S.Ct. at 757.

Folston contends that an evidentiary hearing was required in his case because (2) the state factual determination was not fairly supported by the record and (5) material facts were not adequately developed at the state court hearing.

The evidence presented by Folston at the state hearing on his motion to quash the

indictment was that only four out of eighteen Burke County[1] grand jury members were female in each of the years 1974, 1975 and 1976. In 1973, there were six female grand jury members. The state introduced evidence that the grand jury selection procedures in Burke County were in accordance with the requirements of state law,[2] and that the grand and petit juries were selected from the same pool. The master list was composed of every sixth name from the voting list, and every eighth name from the tax list, minus those statutorily excluded from service. Based on this evidence, the state trial court denied Folston's motion to quash, ruling that "there is no evidence before the Court to indicate that the Jury Commission in either County has intentionally, systematically or arbitrarily discriminated against females ... when it acted in connection with securing the jury list or following the applicable statutes in connection with the makeup of the jury list in either county." The North Carolina Supreme Court affirmed, ruling that a *prima facie* case of discrimination against women was not made out because the defendants failed to introduce evidence of the percentage of women in the total county population. *State v. Hardy,* 293 N.C. 105, 114, 235 S.E.2d 828, 834 (1977). Folston points to this ruling as the basis for his second *Townsend* contention—that material facts were not adequately developed at the state court hearing.

The state court's finding of no discrimination is fully supported by the record. This would remain the case even if Folston had introduced evidence as to the percentage of women in the county; thus, the fact is not "crucial to the adequate consideration of the constitutional claim," as is required under the *Townsend* exception for material facts.

The requirements for establishing a *prima facie* case of systematic discrimination in the grand jury context are set forth in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977):

> The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied.... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time.... Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.... Once the defendant has shown substantial underrepresentation of his group, he has made a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut the case.

Assuming, *arguendo,* that Folston made a *prima facie* case, the State's evidence rebutted any inference of intentional discrimination. Unlike the "key-man" system at issue in *Castaneda,* the North Carolina system was predicated on a random selection process; it was completely impartial. The State presented evidence of how the jury commissions operated and of how the potential jurors were selected, thereby dispelling any inference of intentional discrimination.

"Where the fundamental liberties of the person are claimed to have been infringed, we carefully scrutinize the state-court record." *Townsend,* 372 U.S. at 316, 83 S.Ct. at 758. Here, scrutiny of the record reveals that the State's factual determinations are fairly supported.[3]

1. Folston was indicted in Burke County; his trial was transferred to Cleveland County upon motion for a change of venue.

2. Then N.C. Gen. Stat. § 9–2.

3. We do not disagree with Folston's contention that he has standing to challenge the composition of the grand jury on grounds that women were systematically underrepresented. Numerous lower court decisions and commentators generally have construed the Supreme Court's decisions in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) and *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), as indicating that standing exists. *See, e.g.,* Stone, *Grand Jury Discrimination Charges,* 3 Western N. Eng. L. Rev. 665 (1981).

Equally without merit are Folston's contentions regarding the admissibility of statements by Green. At trial, Green testified over defense objection that while the three men occupied the same cell "Hardy asked Mr. Folston why did he shoot the man" and that "Mr. Folston gave no reply."

I overheard a conversation between Folston and Hardy with reference to what happened on the night of or the early morning hours of the 31st day of July, 1975. The conversation was more or less about the money. Mr. Hardy asked Mr. Folston why did he shoot the man and Mr. Folston gave no reply. Mr. Folston did not say anything when Mr. Hardy asked him why he shot the man.

Green also testified that during this same jail cell conversation, Folston stated that Hardy had told him he had to kill the victim.

Q. Did you overhear any conversation between these two men about any victim of any armed robbery?

OBJECTION as to both defendants.

COURT: OVERRULED.

A. Mr. Folston said Mr. Hardy told him
. . .

MR. SITTON: OBJECTION.

Q. Mr. Folston said what?

A. Mr. Hardy told him you had to kill the victim or he would testify.

MR. SITTON: OBJECTION, your Honor, move to strike.

COURT: OVERRULED.

 Folston now contends that admission of the first statement violated both his right of confrontation under the rule of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and the due process clause of the fourteenth amendment by denying him his right to remain silent. *Bruton* limits the use at a joint trial of a codefendant's admission which also implicates the nondeclarant defendant. Green, however, testified to an admission by Folston himself. Where the incriminating admissions of the nontestifying codefendant are admissible against that defendant under the rules of evidence, *Bruton* is inapplicable. *Id.* 391 U.S. at 128 n. 3, 88

S.Ct. at 1623 n. 3. Folston's silence under the circumstances clearly is an implied admission which renders the statement admissible against him.

The second prong of Folston's argument also is without merit. Contrary to Folston's suggestion, *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), does not create a *per se* rule rendering inadmissible any reference to the post-arrest silence of a criminal defendant. Rather, *Doyle* is expressly limited to the use of silence "at the time of arrest and after receiving *Miranda* warnings." *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245. In its recent decision in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Supreme Court made clear that *Doyle* is inapplicable when the record does not indicate that the defendant "received any *Miranda* warnings during the period in which he remained silent immediately after his arrest." *Fletcher, supra.* Consideration of the rationale underlying *Doyle* makes clear why the holding should be thus limited. As the Court noted in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), "silence following the giving of *Miranda* warnings was ordinarily so ambiguous as to have little probative value." Because a defendant's silence may be induced by the assurances contained in the *Miranda* warnings, the government should not be able to use that silence against him.

In the case *sub judice,* the record is unclear as to whether Folston received *Miranda* warnings. Additionally, the episode of silence took place not immediately after arrest, but several months later. At the time the incident occurred, Folston was not under interrogation by, or even in the presence of, any police officer, attorney or other government representative. He was in the presence of his codefendants only. In such circumstances, Folston may not argue that his silence was so ambiguous and so without probative value as to be inadmissible.

 Finally, Folston contends that he is entitled to an evidentiary hearing on the admissibility of Green's second statement:

"Hardy had told him he had to kill the victim or he would testify." The trial judge concluded the statement was admissible and the district court found the state court findings to be fully supported by the record. Folston disagrees, contending the statement was inadmissible either as the "fruit" of an earlier "poisonous" confession or as violative of the rule of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1966). The short answer to Folston's first contention is that the record reveals no relationship between Green's testimony and Folston's prior confession. Additionally, the suggestion that Folston's confession, which was not introduced, was involuntary is mere supposition. Similarly, there was no evidence that Green was a government "plant" or even that he had decided to become a government witness at the time the statements were made. Thus, Folston's *Massiah* contention also must fail.

Finding no error in the district court's judgment, we affirm.

AFFIRMED.