No. 83–6816.   FORD *v.* KENTUCKY.   Sup. Ct. Ky.   Certiorari denied.

JUSTICE MARSHALL, dissenting.

Petitioner is a Negro male who was 51 at the time he was indicted for murder in Franklin County, Ky.   He challenged the composition of the grand jury that indicted him on the grounds, *inter alia,* that women and young adults were substantially and systematically underrepresented on grand juries in Franklin County.   Testimony from a statistician concluded that this under-representation was statistically significant.   Evidence was also presented that the selection system was not facially neutral, for the voter registration list from which grand jurors are selected in the county contains information on the gender, race, and date of birth of the prospective grand jurors.[1]

Despite petitioner's assertion and his substantiating evidence, the Kentucky Supreme Court refused to consider the merits of this challenge.   665 S. W. 2d 304 (1984).   Instead, that court held that, because petitioner was a 51-year-old Negro male, he had no standing to challenge the exclusion of women or young adults from grand juries in Franklin County.   The court rested its conclusion on the view that challenges to the composition of a grand jury must be rooted in the Equal Protection Clause of the Fourteenth Amendment rather than in that Amendment's due process compo-nent.   Thus, the court below concluded that petitioner himself

---

[1] The voter lists themselves were fairly representative of women, although there was no evidence of their representativeness with respect to young adults.

had no recourse for challenging the imbalance of the grand jury that indicted him.[2]

The conclusion of the Kentucky Supreme Court is flatly at odds with the opinion announcing this Court's judgment in *Peters* v. *Kiff*, 407 U. S. 493 (1972). That opinion, joined by three Justices, stated: "[W]hen a *grand* or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances [*i. e.*, the standing] of the person making the claim. . . . [A] State cannot, consistent with due process, subject a defendant to *indictment* or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States." *Id.*, at 498, 502 (emphasis added). This three-Justice opinion therefore concluded that a white male had standing under both the Equal Protection and Due Process Clauses of the Fourteenth Amendment to bring a racial-discrimination challenge to the state system used to select his grand and petit juries.[3]

The standing question is particularly important in light of the fact that, as of 1977, at least 22 States had some sort of discretionary system for the selection of grand jurors. J. Van Dyke, Jury Selection Procedures: Our Uncertain Commitment to Representative Panels, Appendix B, pp. 264–270 (1977). Because the opinion announcing the judgment in *Peters* was joined by only

---

[2] The court did hold, as our precedents command, that petitioner had standing to challenge the exclusion of Negroes from the grand jury. However, the court rejected this claim on the merits by relying in part on the faulty premise that a study establishing a statistically significant violation of the fair-cross-section requirement did not create a prima facie case of underrepresentation when the violation was shown to exist only over a 2-year period; apparently, the court below believed a far longer period of underrepresentation had to be proved to establish a prima facie case. Our cases have never imposed such a stringent requirement; indeed, in *Duren* v. *Missouri*, 439 U. S. 357, 366 (1979), we held that a demonstration of significant underrepresentation in every jury venire "for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic—that is, inherent in the particular jury-selection process utilized." That same requirement would seem to apply here, for grand juries in Kentucky generally sit for 20-day periods. See Ky. Rev. Stat. § 29A.210 (3) (1980).

[3] Three other Justices reached the same result, but based their decision on the conclusion that standing was available in *Peters* to "implement the strong statutory policy" of 18 U. S. C. § 243, which prohibits States from disqualifying state grand jurors on account of race. 407 U. S., at 505 (WHITE, J., joined by BRENNAN and POWELL, JJ., concurring in judgment).

three Justices, *Peters* did not definitively resolve the standing question raised in this petition for certiorari. The Court also declined in *Alexander* v. *Louisiana*, 405 U. S. 625, 633–634 (1972), to decide whether males could challenge the statutory exemption of women from state grand jury service, although Justice Douglas would have reached the question and invalidated the statute on federal due process grounds. *Id.*, at 634 (Douglas, J., concurring). At the same time, individual Members of the Court have expressed the view that, because the Fifth Amendment right to a grand jury does not apply to state prosecutions, *Hurtado* v. *California*, 110 U. S. 516 (1884), "a state defendant has no right to a grand jury that reflects a fair cross-section of the community." *Castaneda* v. *Partida*, 430 U. S. 482, 509 (1977) (POWELL, J., dissenting).

These conflicting pronouncements from the Court and our failure to speak definitively to the issue have spawned the sort of confusion in the lower courts that calls for the exercise of this Court's certiorari jurisdiction. In contrast to the views of the Kentucky Supreme Court, which are shared by the Supreme Court of Tennessee, see *State* v. *Coe*, 655 S. W. 2d 903 (1983), at least two Federal Courts of Appeals have stated that a male defendant does have a due process right not to have women systematically underrepresented on the state grand jury that indicts him. *Gibson* v. *Zant*, 705 F. 2d 1543 (CA11 1983); *Folston* v. *Allsbrook*, 691 F. 2d 184, 186, n. 3 (CA4 1982), cert. denied, 461 U. S. 939 (1983). In addition to this conflict, and perhaps more importantly, I believe that certiorari is warranted because the decision below, as well as the statements of my colleagues that would support it, misconceives the nature of due process guarantees in the state grand jury context.

The fact that a State has no constitutional obligation to provide a grand jury for state criminal defendants simply does not entail the conclusion that a defendant has no right to an impartial and representative grand jury once the State *does* choose to make use of grand juries. On the contrary, the insertion of a grand jury into the process culminating in trial is of major consequence to the criminal defendant. In Kentucky, as in most jurisdictions, the grand jury both investigates alleged crimes and returns indictments when it believes sufficient evidence of a crime has been established. See Ky. Rev. Stat. §§ 29A.210, 29A.220 (1980); see also *Turk* v. *Martin*, 23 S. W. 2d 937 (Ky. 1930). In both roles, a grand jury that is biased by virtue of its unrepresentativeness has

significant power to influence the fairness of the ensuing trial; the scope and breadth of the preindictment investigation certainly affects the ability of the State to mount a convincing case at trial, and the fact that a body of the petit jury's peers has seen fit to return an indictment may be a powerful sign to the petit jury that the charges are well founded.

Given the potential power of the grand jury over the criminal defendant, there can be no question that due process requires state grand juries to be unbiased and impartial. See, *e. g.*, *Goldberg* v. *Kelly*, 397 U. S. 254, 271 (1970) (once State chooses to bestow administrative benefits, due process requires that administrative decisionmakers be unbiased); *Moore* v. *Dempsey*, 261 U. S. 86 (1923) (holding, many years before Constitution was held to require state jury trials, that state jury must be unbiased). The real question posed by this petition is whether the way to *ensure* that impartiality is to require that grand juries be fairly representative of the community in which they sit.

For two reasons already articulated in our cases, I believe the answer to that question should be yes. First, a grand jury is a collective decisionmaker designed both to find facts and to express the community's moral sense on the important questions presented to it. With respect to such a body, the exclusion of any large and identifiable segment of the community removes from the jury room "qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." *Peters* v. *Kiff*, *supra*, at 503. The exclusion of such a group deprives the grand jury of a perspective on human events that may have unquantifiable but fully legitimate significance with respect to the issues presented. See *Ballard* v. *United States*, 329 U. S. 187, 193–194 (1946) ("The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded").

Second, once a State chooses to employ grand juries, those grand juries become integral elements in the system of criminal justice in that State. Law is not a process by which a society actually arrives at objective truth, but rather a means for structuring the truth-seeking process so that the answers it yields will be accepted as morally legitimate by the community; it is this

acceptance that enables the verdicts of the jury system to be treated as "true." Imperative to the integrity of that system and to its perceived legitimacy is the perception that any biases from whatever source, including divergent cultural and historical experiences, be minimized. As we have said in an analogous context:

> "Selection of members of a grand jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process. The exclusion from grand jury service of Negroes, *or any group otherwise qualified to serve,* impairs the confidence of the public in the administration of justice. . . . 'The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.'" *Rose* v. *Mitchell,* 443 U. S. 545, 555–556 (1979) (quoting *Ballard, supra,* at 195) (emphasis added).

The allegation that, at this time in our history, women are being excluded from grand jury service in some counties of Kentucky—and that potential defendants are being investigated and indicted by such grand juries—surely calls into question the legitimacy of the system of justice in those counties. To sweep this allegation aside with the syllogism that, because there is no right to a state grand jury, there is no right to a fairly representative one, is to elide the practical and symbolic importance of state grand juries.

Finally, I note two of the serious incoherencies that would result from a decision that the Due Process Clause does not give petitioner standing to raise his grand-jury composition challenge. First, there is no dispute that a defendant has long had the right to challenge the composition of a state grand jury with respect to a cognizable group of which he himself is a member. See, *e. g., Strauder* v. *West Virginia,* 100 U. S. 303, 309 (1880). Although the Court has traditionally discussed this right in equal protection terms, it makes little sense to conceive of the right as solely an equal protection one, for the defendant in these cases is not asking to sit on the grand jury but rather to be fairly treated by it. Yet once this is recognized as the fundament of the right at stake, there is no logically defensible or analytically coherent way of arguing that the defendant is not also harmed when any "distinctive" group in the community is underrepresented on his grand jury, see *Duren* v. *Missouri,* 439 U. S. 357, 364 (1979). As *Tay-*

*lor* v. *Louisiana*, 419 U. S. 522, 531 (1975), makes clear, women are such a group.[4]   Second, in most States, as is true in Kentucky, see Ky. Rev. Stat. § 29A.060 (Supp. 1984), the same statutory procedures are used for selecting both grand jurors and the petit jury venire; it is irrational and a little unseemly to say that, with respect to the same defendant, the very same procedures (indeed, the very same jury wheels) are both constitutionally valid and invalid—valid when the grand jury is being picked but invalid when used to pick the petit jury venire.

The opinion of the court below, which complains that "federal decisions have enshrined the statistician on the throne of expertise," 665 S. W. 2d, at 306, makes clear that some lower courts refuse to take seriously the principle that state grand juries must be impartially constituted.[5]   Language from some of our opinions, and statements of individual Members of the Court, may encourage this response.   Yet neither precedent nor logic suggests such a result.   Accordingly, I believe the petition should be granted, and I respectfully dissent from the Court's failure to do so.

---

[4] To resolve the standing question presented by this petition, we therefore need not address the issue of whether young adults constitute a "cognizable group" under the *Duren* standard.

[5] This refusal is further illustrated in the Kentucky Supreme Court's cursory treatment on the merits of petitioner's claim that Negroes were systematically underrepresented on grand juries.   See n. 1, *supra*.   Indeed, the Kentucky court's disregard for the methodological principles laid down in *Duren* provides an independent reason in my mind for granting certiorari.