Ronnie BUCK, Petitioner,

v.

Calvin GREEN, Warden, Respondent.

Civ. A. No. 82–282–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

June 21, 1988.

Alice C. Stewart, Atlanta, Ga., for petitioner.

Paula K. Smith, Atlanta, Ga., for respondent.

ORDER

OWENS, Chief Judge.

The magistrate recommends that petitioner's application for a writ of habeas

corpus be granted because petitioner was indicted by an unconstitutionally composed grand jury. Respondent vigorously objects to the magistrate's recommendation, and petitioner more vigorously urges the court to adopt the recommendation. The recommendation, having been carefully read and thoughtfully considered in light of said views, is hereby accepted in its entirety and made the order of the court. Accordingly, the respondent is hereby ORDERED within 180 days from and after such time as the judgment of this court becomes final to reindict petitioner before a constitutionally composed grand jury and retry him, failing which upon further motion the writ of habeas corpus will be granted and an order discharging petitioner from custody will be entered.

## REPORT AND RECOMMENDATION

CLAUDE W. HICKS, Jr., United States Magistrate.

Petitioner RONNIE BUCK filed the above-captioned matter with this court under provisions of 28 U.S.C. § 2254, contending that habeas corpus relief should be granted to him. The matter was referred to the undersigned by the standing order of this court entered August 6, 1986.

### I. PROCEDURAL BACKGROUND

Petitioner was convicted after a jury trial, of armed robbery and aggravated battery in the Superior Court of Washington County, Georgia on March 20, 1978. He received four life sentences in connection with the armed robbery counts and twenty years on the aggravated battery charge. Thereafter he filed a motion for a new trial alleging in part that blacks and women were discriminatorily excluded from the grand and petit juries that indicted and convicted him.

In support of the motion for a new trial, petitioner's attorney submitted the grand and traverse jury lists for 1974 and 1976 with each name identified as to race and sex.[1] He identified each person's race and gender by looking at the voters registration list which contains this information, and by asking black citizens with personal knowledge to identify those who could not be located on the list. He then compared the percentage of blacks on the jury lists with the percentage of blacks in the age-eligible population of Washington County. This was also done with the actual venire from which petitioner's jury was struck and with the eighteen grand jurors who indicted him. Counsel argued that the resulting disparities were statistically significant and amounted to a prima facie case of discrimination.[2]

The judge denied the motion on the basis that petitioner waived his right to challenge the composition of the jury by not making a timely objection. Under Georgia law in effect at the time of petitioner's motion, an objection to the composition of the grand or trial jury could not be initially raised after conviction unless the court determined good cause existed for not raising the objection earlier. 1975 Ga.Laws 1143–44 (codified at Ga.Code Ann. § 50–127(1); current version at O.C.G.A. § 9–14–42 (1987)). The court concluded that petitioner's attorney failed to challenge the composition of the jury for tactical reasons. Thus, good cause was not shown.

Although denial of the motion did not turn on the statistical evidence presented, the court made the following observation:

A list of juror's names has been introduced into evidence. Defendant contends that the exhibit has been screened by black citizens of Washington County and marked for racial identification. The state stipulated that the list is correct but the accuracy of the racial identification is not admitted as correct by the state. The evidence amounts to an unsubstantiated assertion that blacks were systematically excluded. No additional evidence has been proferred except the census figures.

. . . .

---

**1.** Petitioner's jurors were drawn from the 1976 list.

**2.** No statistics were presented on the number of women on the jury lists compared to the percentage of age-eligible women in the county.

... The doubtful [racial] designations on the list tendered in evidence fail to establish a prima facie case of discrimination. The mere allegation unsupported by proof presents no cause for granting a motion for new trial.

Respondent's Exhibit No. 1, Denial of Motion for New Trial, p. 4–5. The court also noted that the racial composition of the grand and traverse jury lists for Washington County had been upheld in 1971 by the Fifth Circuit Court of Appeals. *See Wiggins v. Haynes*, 439 F.2d 848 (5th Cir.1971).

Petitioner appealed the denial of the motion to the Georgia Court of Appeals. *See Buck v. State*, 151 Ga.App. 252, 259 S.E.2d 493 (1979). That court entertained the jury composition issue on the merits in spite of its untimely assertion. The court denied relief, however, noting the trial court's failure to find the statistics presented to be accurate. *Id.* at 253, 259 S.E.2d at 495.

Thereafter, petitioner filed a petition for habeas relief in the Superior Court of Tatnall County. The petition was later dismissed without prejudice. This federal habeas corpus petition followed.

The only ground for relief raised in the instant petition is whether blacks were systematically excluded from the grand and petit jury panels from which petitioner's jurors were selected.[3] Because the Georgia Court of Appeals chose to entertain the issue on the merits, this court must do so also. *Castaneda v. Partida*, 430 U.S. 482, 485 n. 4, 97 S.Ct. 1272, 1275 n. 4, 51 L.Ed. 2d 498 (1977); *Machetti v. Linahan*, 679 F.2d 236, 238 n. 4 (11th Cir.1982), *cert. denied*, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983).

An evidentiary hearing was held before the Magistrate on May 4, 1987. Petitioner was represented by Ms. Alice C. Stewart. Mr. William B. Hill of the Attorney General's Office appeared for respondent.

Prior to the hearing respondent argued that petitioner had failed to authenticate the racial identification of jurors on the jury list at the state level, and should not be given another opportunity to do so. Respondent urged this court to afford a presumption of correctness to the facts found by the state appellate court under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and rule on the petition without a hearing.

The court initially agreed with respondent and issued a recommendation that relief be denied. Petitioner filed objections to the recommendation and the court reconsidered its decision. Upon further review, the court concluded that petitioner had not had a full and fair opportunity to present his case at the state level. The recommendation was vacated and the federal evidentiary hearing followed. The petition is now ready for a decision on the merits.

At the outset the court will address respondent's prehearing argument that the facts found by the Georgia Court of Appeals are entitled to a presumption of correctness. It is true that federal courts must defer to state court findings of fact unless one of the conditions listed at 28 U.S.C. § 2254(d) are present. *Sumner v. Mata, supra*. Contrary to respondent's assertion, however, neither the trial court nor the court of appeals made a binding factual finding on the sufficiency of petitioner's claim.

As previously noted, the trial court's denial of the motion for a new trial turned on the untimeliness of petitioner's objections to the jury pool, not on the statistical evidence presented. Although the court described the racial designations on the lists as doubtful, there is no indication in the record as to why the court considered them doubtful other than the state's refusal to stipulate to their accuracy. The court does not regard this as a sufficient basis for rejecting them.

The court of appeals simply repeated the trial court's observation that the state had refused to concede to the accuracy of the statistics. Neither court specifically found

---

**3.** Other grounds were raised in an amendment to the petition. The amended petition was dismissed for failure to exhaust state remedies. Petitioner subsequently requested that the unexhausted grounds be dismissed and the case was reopened. Exhaustion is not an issue as far as jury composition is concerned.

the statistics to be inaccurate. As far as the record shows, the state never presented any evidence in rebuttal. In the court's opinion, "the merits of the factual dispute were not resolved in the State court hearing . . . ." 28 U.S.C. § 2254(d)(1).

Moreover, the reliance of both courts on *Wiggins v. Haynes, supra,* is misplaced. That case concerned the method used to compile jury lists in Washington County prior to 1971. Not only does the present case deal with a different period of time, the cases are inapposite in other respects as well. The *Wiggins* court found a significant underrepresentation of blacks in the Washington County jury pool, but concluded on the basis of specific facts concerning the method of selection, that the underrepresentation was not the result of discrimination. Those facts are not present in the case at bar.

 Accordingly, this court must make its own factual determinations based upon the record. Although the court does not agree with respondent's assertion that the statistical evidence presented below was conclusively found to be inadequate, the court will not base its decision upon that evidence.[4] Sufficient evidence upon which to base a decision was presented at the evidentiary hearing held before this court.

## II. THE RELEVANT EVIDENCE

At the hearing petitioner presented statistical evidence through the testimony of Mr. Neal Bradley, concerning the racial composition of the Washington County grand jury lists for 1972 through 1983. The lists were revised approximately every two years. Mr. Bradley, an attorney for the American Civil Liberties Union, had compiled the statistical information for another jury composition case filed by black citizens of Washington County in 1983. *See Sweet v. Pierce,* No. 83–278–2–MAC(WDO).

The method by which Mr. Bradley identified the racial composition of the jury lists was the same method used by petitioner's attorney below. By using the voters registration list for Washington County he was able to identify the race of most of the people selected to be grand jurors for various years. *See, e.g.,* Exhibit G. He was unable to identify 96 out of 1,939 grand jurors in this manner. Those names were sent to Mr. George Williams, a Washington County jury commissioner, who was able to identify 49 of them. The remaining names were not identified. Transcript of Evidentiary Hearing [hereinafter T.] p. 43–44.

The percentages of black and white jurors for each year studied was then tabulated and compared with the percentages of age-eligible black and white citizens of Washington County. Exhibits C and F. The age-eligible data was obtained from the 1970 census. Exhibits A and D.

Respondent objected to the admission of this evidence under Rules 901, 902, 1001, 1002, 1003, 1004 and 1005 of the Federal Rules of Evidence. (T. 47). As below, respondent did not dispute the authenticity of the jury lists or the census figures. Respondent argued, however, that petitioner had not sufficiently demonstrated the reliability of the racial identification. Up to that point petitioner had not submitted a certified copy of the voters registration list from which the identification was made. (T. 48–52).

At the conclusion of the hearing the court ordered petitioner to supplement the record by furnishing the court with a copy of the voters registration list in question. (T. 123–125). A certified copy of the 1976 voters registration list has been submitted. (Record, Tab 42). The court has conducted its own comparison between a random sample of names on the jury list and names on the voters registration list and has found the racial identification to be reliable. Thus, the court considers the testimony of

---

4. A transcript of the hearing on petitioner's motion for a new trial was not made a part of the record. Therefore, the court has no way of knowing whether the validity of the statistics were tested in any meaningful way. For this reason the court prefers to rely solely on the evidence presented at the federal hearing. No statistical evidence was presented concerning the racial composition of the traverse jury lists at the evidentiary hearing. Therefore, this recommendation is based only upon the racial composition of the grand jury pool.

Mr. Bradley and the exhibits submitted into evidence to be competent proof of the racial makeup of petitioner's grand jury pool.

Although several of the exhibits presented at the hearing deal with the racial composition of grand juries for years other than 1976, the court will consider only the 1976 grand jury pool.[5] This is the only year for which a master jury list identified by Mr. Bradley was submitted and the only year for which a voters registration list was obtained. Petitioner's trial was in 1978, but the parties agree that his jurors were selected from the 1976 master list. (T. 88).

## III. THE LEGAL PRINCIPLES

■ Discriminatory selection of grand juries in state courts may be challenged under the equal protection clause of the Fourteenth Amendment. *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). Challenges to the traverse jury may be brought under the Fourteenth Amendment as well, or, under the fair cross-section requirement of the Sixth Amendment. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Gibson v. Zant,* 705 F.2d 1543, 1546 (11th Cir.1983). It is not clear whether a challenge to the composition of a state grand jury may also be brought under the Sixth Amendment. *Compare Machetti v. Linahan,* 679 F.2d 236, 239 (11th Cir.1982) (the Sixth Amendment embraces a right to a grand jury "selected at random so as to represent a fair cross-section of the community") *with Castaneda,* 430 U.S. at 510, 97 S.Ct. at 1288 (Powell, J., dissenting) ("in a state case in which the challenge is to the grand jury, only the Fourteenth Amendment applies....").

In any event, the prima facie case under either analysis is "virtually identical." *Bowen v. Kemp,* 769 F.2d 672, 683 (11th Cir.1985), *cert. denied,* 478 U.S. 1021, 106

S.Ct. 3337, 92 L.Ed.2d 742 (1986). In an equal protection case:

"The first step is to establish that the group is one that is a recognizable, distinct class.... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as ... jurors, over a significant period of time.... Finally, ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing."

*Id.* at 684 (quoting *Castaneda,* 430 U.S. at 494, 97 S.Ct. at 1280) (citations omitted).

In a fair cross-section case:

"[T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Id.* (quoting *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)).

■ Although the petitioner's burden of proof is the same under either analysis, the evidence the state must offer in rebuttal if a prima facie case is made out, differs according to the type of challenge. Under the equal protection clause the state must show the absence of discriminatory intent. In the fair cross-section context discriminatory intent is irrelevant. In order to rebut a prima facie case under the Sixth Amendment the state must prove that a significant governmental interest is advanced by the selection process which justifies the imbalance. *Machetti,* 679 F.2d at 241 n. 6; *Gibson,* 705 F.2d at 1546 n. 4; *Bowen,* 769 F.2d at 684 n. 7.

For purposes of the present case the court need not decide whether petitioner

---

5. After the hearing petitioner filed a motion to supplement the record with a copy of the consent judgment ordered in *Sweet v. Pierce, supra.* As set forth above, the court finds it unneces-

sary to go beyond the evidence presented at the evidentiary hearing supplemented by the 1976 voters registration list.

has advanced an equal protection challenge, a fair cross-section challenge, or both. Under either analysis, petitioner has presented sufficient evidence to make out a prima facie case of discrimination which respondent has failed to rebut.

## IV. THE PRIMA FACIE CASE

■ The first element of petitioner's prima facie case is clearly satisfied since black persons constitute a recognizable, distinct class. *Gibson*, 705 F.2d at 1547; *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1879).

■ The second element has been satisfied by the statistical evidence which shows a significant underrepresentation of black persons in the 1976 grand jury pool.[6] In 1970, black citizens comprised 46% of the population of Washington County who were twenty-one or over.[7] They made up only 12% of the grand jury pool, however, assuming that all unidentified members were black. Exhibits B and C. The resulting disparity is 34%. Exhibit C. A 34% disparity is considered to be significant under the prevailing case law. *Machetti*, 679 F.2d at 241; *Gibson*, 705 F.2d at 1547; *Bowen*, 769 F.2d at 686.

■ The third element of the prima facie case has been satisfied because it is clear that the method of selecting grand jurors was not racially neutral and was susceptible to abuse. According to Georgia law in effect at the time of the 1976 revision, the board of jury commissioners compiled the traverse jury lists by selecting "a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voters' list of the county...." 1973 Ga.Laws 486 (codified at Ga.Code Ann. § 59–106; current version at O.C.G.A. § 15–12–40 (1987)). From the traverse jury list the commissioners were directed to select "a sufficient number of the most experienced, intelligent and upright citizens ... to serve as grand jurors." *Id.* In *Turner v. Fouche*, 396 U.S. 346, 355, 90 S.Ct. 532, 537, 24 L.Ed.2d 567 (1970), the Supreme Court observed that this method of selection is not "inherently unfair." The court has also recognized, however, that this method of selecting jurors is highly subjective and susceptible to abuse. *Castaneda*, 430 U.S. at 497, 97 S.Ct. at 1281–82.

Three of the six jury commissioners who worked on the 1976 revision testified at the evidentiary hearing. The voters registration list submitted to the court indicates the race of each person listed, but the list provided to the jury commissioners did not. Nevertheless, each commissioner either personally knew or attempted to familiarize himself with most of the people selected. Accordingly, the race of the person would have been known to them. Mr. George Williams testified that if he did not know the race of a person on the list, he found out from other people in the community. Clearly, this was not a racially neutral selection procedure.

## V. RESPONDENT'S REBUTTAL

Since petitioner successfully demonstrated a prima facie case of discrimination, the burden of proof shifted to respondent to "dispel the inference of intentional discrimination." *Castaneda*, 430 U.S. at 497–98, 97 S.Ct. at 1282. In discussing how to rebut this presumption, the Eleventh Circuit has stated the following:

> Specific criteria for what constitutes a rebuttal case have never been developed, however, several guidelines are well known. The central focus of a rebuttal case must be on a "showing that racially neutral selection procedures have produced the disparity." Moreover, "affirmations of good faith in making individual

---

**6.** Statistical evidence covering a period of a single year has been held to be sufficient by the Supreme Court. *Duren*, 439 U.S. at 366, 99 S.Ct. at 669. *See also Ford v. Kentucky*, 469 U.S. 984, 985 n. 2, 105 S.Ct. 392 n. 2, 83 L.Ed.2d 325 (1984) (Marshall, J., dissenting).

**7.** Prior to 1977 grand jurors had to be at least 21 years old. 1977 Ga.Laws 341–42 (codified at Ga.Code Ann. § 59–201; current version at O.C.G.A. § 15–12–60 (1985)). Six–year–old census data has been accepted by the Supreme Court as adequate proof of the number of eligible jurors. *Duren*, 439 U.S. at 365 n. 24, 99 S.Ct. at 669 n. 24.

selections are insufficient to dispel a prima facie case of systematic exclusion." In other words, a mere denial of discriminatory intent will not suffice. This is not to say, however, that testimony alone is per se insufficient. We believe instead that testimony from the alleged discriminators should be viewed with a great deal of judicial scrutiny.

*United States v. Perez–Hernandez,* 672 F.2d 1380, 1387 (11th Cir.1982) (citations omitted).

■ Out of the three jury commissioners who testified at the hearing, one stated that he made a specific attempt to include more black people on the jury list. The other two commissioners denied paying any attention to race and looked only at whether each person was an intelligent and upright citizen in accordance with the statute. One stated that they were instructed not to be biased. All three denied that they had excluded anyone because of their race. Nothing else was offered in rebuttal.

Respondent argues that if there was any abuse in the selection process it was in favor of putting blacks on the jury, not in excluding them. The statistics certainly do not bear this out and neither does the testimony of the jury commissioners.

There was very little testimony as to how the jury commissioners actually made their choices. They stated that they looked for intelligent and upright citizens but did not describe the criteria used to judge who was intelligent and upright. What the testimony of the commissioners boils down to is a denial of discrimination and an unsupported assertion that they followed the statute. This alone is insufficient to rebut the inference of discrimination. *Compare Perez–Hernandez,* 672 F.2d at 1387–88 (prima facie case rebutted by testimony concerning four specific factors used to judge who was qualified to serve as grand jury foreman).

Respondent has failed to rebut the prima facie case under the fair cross-section analysis as well. No evidence was presented to prove a significant governmental interest in the method of selection used by the commissioners.

## VI. CONCLUSION

In accordance with the foregoing analysis it is the RECOMMENDATION of the Magistrate that the petition for habeas corpus relief herein be GRANTED. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the Honorable Wilbur D. Owens, Jr., United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

SO RECOMMENDED, this 20th day of May, 1988.