UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4059

DANIEL HOWARD CAIN,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-27-5)

Argued: December 5, 1997

Decided: March 27, 1998

Before WILLIAMS, Circuit Judge, WILSON, Chief United States
District Judge for the Western District of Virginia, sitting by
designation, and MORGAN, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John J. Pizzuti, CAMILLETTI, SACCO & PIZZUTI,
L.C., Wheeling, West Virginia, for Appellant. Thomas Oliver Muck-
low, Assistant United States Attorney, Wheeling, West Virginia, for
Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney,
Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury found Daniel Howard Cain guilty of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The district court found him to be an armed career criminal under 18 U.S.C. § 924(e)[1] and sentenced him to 235 months imprisonment. Cain contends that the district court improperly considered a conviction under a Pennsylvania burglary statute as a predicate offense in making its § 924(e) determination. He also raises various trial and sentencing errors. We affirm.

I.

Cain is an inveterate criminal. He has been convicted of at least twenty-five serious offenses, many of which are felonies and some of which are violent. The evidence in the instant case, viewed in the light most favorable to the government, establishes the following. Cain purchased a .22 caliber rifle from Terry Jobes, the stepfather of a neighbor, Susan Annett Smith. Several days later, in the early morning hours of September 21, 1995, while in a drunken state, Cain used the rifle in what appears to have been a sporting event to fill his rented trailer in Wetzel County, West Virginia full of holes and to shoot at Ms. Smith's house and at the gas tank of his parked car. Ms. Smith witnessed part of the event and called the police.

The police went to Cain's trailer later that day but Cain was not home. Several days later the police returned, questioned Cain about the incident, and with his consent searched the trailer. They found

_____

[1] Section 924(e) provides that a person who has violated 18 U.S.C. § 922(g) and who has three previous convictions for violent felonies or serious drug offenses shall be fined no more than $25,000 and shall be imprisoned for at least fifteen years. 18 U.S.C.§ 924(e).

nothing in the search. Cain could not behave, however, even during the brief time the police were there. He assaulted his girlfriend, and the police arrested him. He never returned to live in the trailer after that arrest, and in early February 1996, a neighborhood child found a .22 caliber rifle in a snowbank behind Cain's trailer. Later, Jobes identified the rifle as the one he sold to Cain.

The government charged Cain with possessing that firearm in violation of 18 U.S.C. § 922(g)(1), and a jury found him guilty. The presentence report noted that Cain's three prior convictions for the violent felonies of armed robbery, burglary, and robbery qualified him as an armed career criminal under 18 U.S.C.§ 924(e)(1).

Cain objected to the inclusion of the burglary conviction as a predicate offense. That conviction resulted from Cain's 1978 guilty plea in Pennsylvania to burglarizing an automobile dealership building in violation of Pennsylvania's burglary statute, 18 Pa. Cons. Stat. Ann. § 3502.[2] The presentence report described that conviction and two related theft convictions arising out of an incident on November 29, 1977, as follows:

> On that date, a window at the car dealership was broken and several sets of new car keys were stolen. It was discovered that the defendant used the key to steal a 1978 Buick valued at $7,249. He drove his car to Pittsburgh, returned to the dealership and stole a second Buick LaSabre valued at $7,272. He was driving this car when he was arrested by the Pittsburgh police.
>
> As a result of the defendant's arrest on December 8, 1977, two Informations were filed in Allegheny County Common Pleas Court. At CC7708312A, Mr. Cain was charged with Burglary, the break-in at [the automobile

_____

[2] This statute provides that "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa. Cons. Stat. Ann. § 3502(a).

> dealership], and two counts of Theft, one for each of the stolen Buicks.

Joint Appendix (J.A.) 474.

Cain's objection centered upon his contention that convictions under Pennsylvania's burglary statute could not qualify as predicate offenses:

> Mr. Cain contends that his burglary conviction does not qualify as an enhancement in that the predicate offense involves Pennsylvania burglaries. Pennsylvania burglaries are different from, and broader than, even the modern generic definition of burglary contained in the majority of the States' Criminal Codes.

J.A. 512. Cain never contended, however, that the presentence report mischaracterized the facts of the incident or his plea to burglary of the automobile dealership's building.

The government replied to Cain's objection, quoting the specific charge to which Cain pled guilty:

> The actor entered a building or occupied structure or separately secured or occupied portion thereof; <u>namely a commercial building</u> occupied as a new car Buick agency occupied by Levine-Jones Buick, Inc., with the intent to commit a crime therein, at the time when the premises were not opened to the public and the actor was not licensed or privileged to enter, in violation of Section 3502 of the Pennsylvania Crimes Act of December 6, 1972, 18 Pa. C. S. § 3502. (emphasis added)

J.A. 103. Cain neither responded nor challenged at sentencing the government's recitation of the Pennsylvania charge. The district court overruled Cain's objection, found the conviction to qualify as a predicate offense, and sentenced Cain as an armed career criminal. After it sentenced Cain, the district court permitted the government to supplement the record with the Pennsylvania indictment and judgment of conviction.

4

II.

Cain appears to make two challenges to the district court's finding that he is an armed career criminal under § 924(e)(1). First, he continues to maintain that no conviction under Pennsylvania's burglary statute can qualify as a predicate offense. Second, he makes a challenge he did not make at sentencing. He maintains that even if a conviction under the statute can qualify, the government failed to prove that his conviction qualified because the government did not formally introduce into evidence the charging instrument or certified record of conviction at sentencing. We reject both challenges.

The sentence enhancement provision of § 924(e) applies if a defendant has three previous violent felony or serious drugs convictions. "Violent felony" is defined as a crime punishable by more than one year imprisonment that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of visible injury to another.

18 U.S.C. § 924(e)(2)(B). Any generic burglary--burglary as that term is ordinarily used in most states' criminal codes--qualifies as a burglary under the statute. United States v. Taylor, 495 U.S. 575, 598 (1990). The Supreme Court in Taylor held that "the generic . . . meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor , 495 U.S. at 598; see also United States v. Bowden, 975 F.2d 1080, 1083 (4th Cir. 1992).

In determining whether a burglary conviction qualifies, the sentencing court ordinarily should look only to the statutory definition of the offense and not to the underlying facts of the conviction. Taylor, 495 U.S. at 601. If the statute proscribes conduct that may or may not qualify as generic burglary, however, the court may look beyond the fact of conviction and the statutory definition and determine whether

5

the indictment and jury instructions, for example, required the jury to "actually find all the elements of [generic] burglary." United States v. Cook, 26 F.3d 507, 509 (4th Cir. 1994). The Pennsylvania burglary statute criminalizes conduct that qualifies as generic burglary because it prohibits the unlawful entry into a building with the intent to commit a crime. See Pa. Cons. Stat. Ann. § 3502(a). We reject, therefore, Cain's first challenge that no conviction under that statute can qualify as a predicate offense. We now turn our attention to Cain's second challenge, a challenge he did not raise at sentencing--that the government failed to prove that his conviction qualifies because it did not formally introduce at sentencing the charging instrument or certified record of conviction.

Although the Pennsylvania burglary statute criminalizes conduct constituting generic burglary, it also criminalizes conduct that would not qualify as generic burglary. See United States v. Bennett, 100 F.3d 1105, 1109 (3rd Cir. 1996) (holding that Pennsylvania's burglary statute was broader than the generic definition of burglary because the definition of "occupied structure" under Pa. Con. Stat. Ann. § 3501 included vehicles and places adapted for "carrying on business"). Consequently, Cain's burglary conviction does not automatically qualify as a "violent felony" under § 924(e). It qualifies only if the Pennsylvania trial court that accepted Cain's plea was required to find all the elements of generic burglary. In this case, that inquiry appropriately begins with the presentence report.

The presentence report related the conduct that resulted in Cain's guilty plea--the break-in of the automobile dealership's building-- and described the charge as a "[b]urglary" charge for the "break-in at [the automobile dealership]." Cain's objection to the presentence report focused on the question of whether any violation of the Pennsylvania burglary statute could qualify as a predicate offense. Cain neither challenged the report's description of the charge and conviction[3]

---

[3] A defendant has the burden of showing that his presentence report is inaccurate or unreliable. United States v. Terry , 916 F.2d 157, 162 (4th Cir. 1990). The defendant may not merely object to a finding in the report, but must make an affirmative "showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." Id. If the defendant fails to make such a showing, "the court `is free to adopt the findings of the [presentence report] without more specific inquiry or explanation.'" Id. (quoting United States v. Mueller, 902 F.2d 336, 346 (5th Cir. 1990)).

6

nor the government's verbatim recitation of the charge. Moreover, at sentencing, Cain never argued that the government had failed to prove that he was convicted of burglarizing the automobile dealership's building or that the proof of that conviction was deficient because the government had failed to introduce the indictment and judgment of conviction. As framed by Cain's objection to the presentence report and Cain's arguments at sentencing, therefore, the issue before the district court relating to Cain's career criminal status remained simply whether a conviction under the Pennsylvania burglary statute could ever qualify as a predicate offense. The introduction of the pertinent legal documents was unnecessary to resolve that narrow issue. Consequently, we conclude that the district court properly sentenced Cain as an armed career criminal.**4**

III.

Cain also complains about the district court's refusal to credit him with acceptance of responsibility under U.S.S.G.§ 3E1.1. Cain testified at sentencing that Ms. Smith lied about seeing him with the rifle. The district court obviously concluded otherwise, and decided instead that Cain had testified untruthfully about those matters. The district court did not clearly err in reaching this conclusion and in not crediting Cain with acceptance of responsibility. See United States v. Gordon, 895 F.2d 932, 937 (4th Cir. 1990).

_____

**4** Because Cain did not challenge the presentence report's description of his burglary conviction and did not argue at sentencing that the government had failed to satisfy its burden of proof because it failed to introduce the pertinent legal documents, we once again decline to decide whether a district court may rely on a presentence report's description of a burglary conviction, when the reliability of that description is in issue. See United States v. Bowden, 975 F.2d 1080, 1082 n.2 (4th Cir. 1992). We note, however, that other circuits have held that a sentencing court in some circumstances may look to a presentence report in analyzing the nature of a previous conviction for purposes of sentencing pursuant to § 924(e). See United States v. Harris, 964 F.2d 1234, 1236 (1st Cir. 1992); United States v. Adams, 91 F.3d 114, 116 (11th Cir.), cert. denied, 117 S. Ct. 623 (1996). Moreover, we agree with the Second Circuit that absent a challenge to the reliability of the presentence report's description of the predicate offense, a remand is unwarranted. See United States v. Pearson, 77 F.3d 675, 677 (2d Cir. 1996).

7

IV.

After the court sentenced Cain, it permitted the government to submit the records of Cain's Pennsylvania burglary conviction for purposes of appeal pursuant to Rule 10(e) of the Federal Rules of Appellate Procedure. Those records contain additional support for the conclusion that Cain pled guilty to generic burglary. Cain challenges the district court's decision to supplement the record. In light of our conclusion that the district court properly sentenced Cain on the record before it, we need not decide the issue.

V.

Cain contends additionally that the district court erred by refusing to instruct the jury that the government was required to prove beyond a reasonable doubt that his possession of the rifle had a substantial impact on interstate commerce. Cain cites the case of United States v. Lopez, 514 U.S. 549 (1995), in support of his argument. In Lopez, the Supreme Court struck down as unconstitutional the Gun-Free School Zones Act, 18 U.S.C. § 922(q), which prohibited possession of a firearm in a school zone. The Court found that the provision by its terms had nothing to do with commerce and that the statute contained no jurisdictional element that would ensure"through a case-by-case inquiry" that the possessed firearm had affected interstate commerce. Lopez, 514 U.S. at 561. Lopez, however, does not stand for the proposition that the specific conduct of each charged individual must have a substantial impact on interstate commerce. In fact, "Lopez expressly reaffirmed the principle that `where a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'" United States v. Leshuk, 65 F.3d 1105, 1112 (4th Cir. 1995) (quoting Lopez, 514 U.S. at 558)); see also Perez v. United States, 402 U.S. 146, 154 (1971) ("Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power `to excise, as trivial, individual instances' of the class.") (quoting Maryland v. Wirtz, 392 U.S. 183, 197 n.27 (1968)). This court, subsequent to Lopez, has held that Congress acted within its power under the Commerce Clause in passing 18 U.S.C. § 922. See United States v. Wells, 98 F.3d 808, 810-11 (4th Cir. 1996) (holding that § 922(g)'s jurisdictional element requiring the government to prove

8

the firearm's connection to interstate commerce satisfied "the minimal nexus required for the Commerce Clause"). The government, therefore, does not need to prove that a specific individual's possession of a firearm had a "substantial" impact on interstate commerce in order to convict a defendant under § 922. Accord United States v. Farnsworth, 92 F.3d 1001, 1006-07 (10th Cir.) (holding that the government did not need to show that the individual's firearm possession substantially affected interstate commerce in order to convict a defendant under § 922), cert. denied, 117 S. Ct. 596 (1996). The district court, therefore, properly refused Cain's proffered instructions.

VI.

Cain claims the district court erred in a number of its evidentiary rulings. Such rulings will not be disturbed absent an abuse of discretion. See United States v. ReBrook, 58 F.3d 961, 967 (4th Cir. 1995). We have reviewed those rulings and find no abuse of discretion.

First, Cain complains about evidence that he possessed a rifle other than the one described in the indictment. That evidence actually came in on cross-examination. Cain's counsel cross-examined Jobes about the date Jobes claimed he sold Cain the rifle described in the indictment, noting that Jobes had given a different date on an earlier occasion. The court permitted Jobes to explain that he had mistaken the date with the date he sold Cain another rifle. Under the circumstances it was perfectly appropriate, indeed necessary, for Jobes to explain. Jobes' explanation had become intertwined with evidence of the offense charged against Cain, and the court properly admitted it. See United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1995) ("[E]vidence of uncharged conduct is not considered `other crimes' evidence if it . . . `is necessary to complete the story of the crime (on) trial.'") (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)); United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980) (holding that Rule 404(b) of the Federal Rules of Evidence did not prohibit evidence of other crimes "when such evidence `furnishes part of the context of a crime' or is necessary to a `full presentation' of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its `environment' that its proof is appropriate in order `to complete the story of the crime on trial by proving its imme-

9

diate context or the `res gestae.'" (footnotes omitted)).**5** Moreover, out of an abundance of caution, the court told the jury to disregard the evidence of the other rifle. That instruction was broader than required, and, in any event, was sufficient to avoid any hint of prejudice.

Second, Cain maintains that the court erred in admitting evidence of the altercation between Cain and his girlfriend. We disagree. We find that this evidence was intertwined with circumstantial evidence of the offense charged against Cain and that it was necessary to complete the story of the crime. See Kennedy, 32 F.3d at 85-86. The police arrested Cain while the search was in progress; Cain never returned to the trailer to live; and although the police failed to find the rifle in their search of Cain's trailer, a neighborhood child found the rifle in a snowbank close to Cain's trailer. Cain's arrest helps to explain his subsequent absence from the trailer. This absence, in turn, provides a reason for Cain's failure to retrieve the rifle and explains why it was still located nearby several months after the shooting. In our view, therefore, the police officer's testimony regarding Cain's altercation and arrest is intertwined with a link in the chain of circumstantial evidence against Cain, and the court properly admitted it.

Third, Cain maintains that the court erred in admitting evidence that there were bullet holes in his trailer. We find that evidence to be corroborative of Ms. Smith's testimony and see no reason why the court should not have admitted it.

_____

**5** Cain's case is distinguishable from United States v. Tate, 715 F.2d 864 (4th Cir. 1983), in which this court ruled that the district court erred, pursuant to Rule 404(b) of the Federal Rules of Evidence, by allowing testimony that the defendant earlier had possessed a gun different from the firearms involved in the charge against him. In Tate, the government at trial introduced this evidence in an attempt to rebut the defendant's testimony that he lacked knowledge of the presence and ownership of the guns in question. Tate, 715 F.2d at 865. On appeal, the Tate court ruled that evidence of the earlier firearm had no relevance to these issues. Id. In Cain's case, by contrast, the government did not affirmatively introduce the disputed testimony. Rather, the testimony was elicited by the defendant during cross-examination in an attempt to impeach the government's witness. The testimony regarding the earlier firearm constituted an integral part of the witness' answer to defense counsel's attempt to impeach Jobes.

10

Fourth, and finally, Cain complains about the statement of the officer that searched his trailer that Cain "really didn't want to answer any of [his] questions." Cain had moved in limine to exclude Cain's refusal to answer questions. The government responded to the motion that it did not intend to offer evidence of Cain's refusal. Despite that response, the officer testified without further objection that Cain did not want to answer his questions. Presumably, Cain now maintains that the officer's statement is an improper comment about Cain's right to remain silent. We reject Cain's argument.

"The government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his Miranda warnings. . . . In addition, the government may comment on a defendant's silence when it occurs after arrest, but before Miranda warnings are given." United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991); see also United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985); Folston v. Allsbrook, 691 F.2d 184, 187 (4th Cir. 1982). On the record before the court it is impossible to determine whether or not the comment was improper. Even in the event that the trial court erred by allowing the officer's testimony, however, that error was harmless. See Chapman v. California, 386 U.S. 18, 23-24 (1967); Tuggle v. Netherland, 79 F.3d 1386, 1392 (4th Cir.), cert. denied, 117 S. Ct. 237 (1996). Susan Annett Smith testified that she observed Cain holding a rifle in his trailer and then saw him shooting a .22 rifle as he stood outside her bedroom window. Terry Jobes testified that he had traded a .22 rifle to Cain a few days before the shooting and identified that rifle as the one later found near Cain's trailer. In the face of such evidence, we have no trouble finding beyond a reasonable doubt that the guilty verdict in Cain's case was unattributable to the police officer's passing comment regarding Cain's reluctance to answer questions. See Chapman, 386 U.S. at 24; Sullivan v. Louisiana, 508 U.S. 275, 279 (1993).

VII.

Finally, Cain challenges the sufficiency of the evidence. We must uphold the jury's verdict "if there is substantial evidence, taking the the view most favorable to the government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). We find Cain's challenge to be without merit.

11

When construed in the light most favorable to the government, we believe that, based on the evidence detailed above, a rational jury could have concluded beyond a reasonable doubt that the rifle found by the neighborhood child near Cain's trailer was the same rifle Cain possessed on September 21, 1995 and that Cain discarded it there. We, therefore, reject Cain's final challenge.

VIII.

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED